# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Albert Rattacasa, *et al.*, ) | Civil Action No. 9:22-cv-1251-RMG |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Estate Management Services, Inc., *et al.*, ) | **ORDER AND OPINION** |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is Plaintiffs' motion for preliminary injunction (Dkt. No. 30). For the reasons set forth below, the Court denies Plaintiffs' motion.

## I.     Background

Plaintiffs are former employees of Defendant Estate Management Services, Inc. ("EMS"). Defendant John Milton Crabb, III is allegedly the 100% owner and operator of EMS.  Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq.* Plaintiff Albert Rattacasa also brings individual claims against Defendants including defamation, breach of contract, tortious interference with contract, breach of contract accompanied by a fraudulent act, negligent misrepresentation, abuse of process, and unjust enrichment. (Dkt. No. 30 at 1-2); (Dkt. No. 30-1 at 1-2); *see also* (Dkt. No. 5).

Plaintiffs move for a preliminary injunction as it regards their FLSA and SCPWA claims, and Rattacasa's tortious interference and breach of contract claims. Plaintiffs allege that Defendants are in the process of selling EMS to Solitude Lake Management ("SOL") for $11.75 million dollars and that the sale "is expected to take place in July of 2022." Plaintiffs ask that the Court order Defendants to place "between 1.5 million and 2.5 million" dollars from the sale in the

"Defendants' Attorneys' or Plaintiffs' Attorney's trust account" pending disposition of this lawsuit. Plaintiffs argue that Crabb spends "excessively" and that if the Court does not grant the injunction, "by the time [Plaintiffs] prevail on the merits of their claims[,] Crabb will have either spent or hidden the proceeds he receives from the sale of" EMS. (Dkt. No. 30-1 at 29).

Defendants oppose Plaintiffs' motion. (Dkt. No. 39).

## II.     Legal Standard

To obtain a preliminary injunction, a party must make a "clear showing" that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008); *see also, Smith v Ozmint*, 444 F. Supp. 2d 502, 504 (D.S.C. 2006). All four requirements must be satisfied in order for relief to be granted. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (citations and internal quotation marks omitted).

Plaintiff must "clearly" demonstrate that he is "likely" to succeed on the merits. *Real Truth About Obama*, 575 F.3d at 346–57; *Carcaño v. McCrory*, 203 F.Supp.3d 615 (M.D.N.C. Aug. 26, 2016). A party seeking a preliminary injunction must show that he is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Irreparable injury must be both imminent and likely; speculation about potential future injuries is insufficient. *Id.* at 22. Plaintiff bears the burden of showing that each factor supports his request for preliminary injunction. *Direx Israel, Ltd.*, 952 F.2d at 812.

**III.     Discussion**

Defendants argue that Plaintiffs' motion for preliminary injunction fails for various reasons. The Court only addresses "irreparable harm," as Plaintiffs' failure to establish this factor is dispositive.

"[A] preliminary injunction is not normally available where the harm at issue can be remedied by money damages." *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (*citing Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691 (4th Cir. 1994)). However, "[e]ven if a loss can be compensated by money damages ..., extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction." *Hughes Network Systems*, 452 F. App'x at 694.  Such circumstances may exist where, for example, "the moving party's business cannot survive absent a preliminary injunction or where damages may be unattainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Id.*  It is undisputed that Plaintiffs are seeking monetary damages for Defendants' alleged wrongs. *See* (Dkt. No. 30-1 at 35-37).

After a careful review of the parties' arguments, the Court finds that Plaintiffs have failed to establish "irreparable harm" as Plaintiffs have not clearly established Crabb will become insolvent before final judgment.  As Defendants point out, Plaintiffs' contention on this point is directly contradicted by allegations in the First Amended Complaint.  Namely, Plaintiffs allege that even after EMS is sold, Crabb will retain two warehouse buildings which he will lease for "$130,000" per year and which are worth roughly "$1.5-2 million" dollars, (Dkt. No. 5 ¶¶ 191, 192)—about the amount Plaintiffs ask this Court to order placed in an attorney trust account. Further, Plaintiffs' principal argument as to why Crabb will be insolvent before judgment is that he spends "excessively." *See* (Dkt. No. 30-1 at 28-29) (citing a tax return and various credit card

statements for this proposition); (Dkt. No. 30-18 ¶¶35, 36, 40) (declaration of former employee Laurie Gawin that Crabb leads an "extravagant lifestyle," that he and his wife put purchases on the company's credit cards, and that many of said purchases are for "luxury items"). As Defendants point out, however, for Crabb to spend $11.75 million dollars before May 1, 2023—the day currently set for trial in this matter—"Defendants would need to spend approximately $1.23 million per month or roughly $38,000 *every day*," (Dkt. No. 39 at 15) (emphasis added), a proposition which, on the evidence before the Court, Plaintiffs have not established by clear evidence. *See Amazon.com v. WDC Holdings LLC*, 2021 U.S. App. LEXIS 26226, (4th Cir. 2021) (affirming entry of preliminary injunction requiring defendant to secure $21,250,000 through surety bonds and escrow payments where defendant was likely to become insolvent due to "lawsuits, business failures, and FBI inquires").[1]

### IV.     Conclusion

For the reasons stated above, Plaintiffs' motion for preliminary injunction (Dkt. No. 30) is **DENIED**.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

July 19, 2022
Charleston, South Carolina

---

[1] By way of further example, Plaintiffs allege Crabb charged roughly $199,290.08 in personal expenses to EMS in 2000. (Dkt. No. 30-1 at 28). At this rate, it would take Crabb roughly *58 years* to spend the $11.75 million dollars Plaintiffs allege he will earn from the sale of EMS.