IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Johnathon Hammonds, Kaleb Riggan, David Biecker, Brendan Dutchak, Benjamin Clough, Julie Evans, and Brent Carey, On Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Estate Management Services, Inc. and John Milton Crabb, III<br><br>Defendants. | CIVIL ACTION NO.: 9:22-cv-01251-RMG<br><br>**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR COURT APPROVAL OF THE SETTLEMENT** |

    Plaintiffs Johnathon Hammonds, ("Hammonds") Kaleb Riggan ("Riggan"), David Biecker ("Biecker"), Brendan Dutchak ("Dutchak"), Benjamin Clough ("Clough"), Julie Evans ("Evans'), Brent Carey ("Carey"), Tylone Duhart,("Duhart") Rodney Lemon ("Lemon") (collectively "Plaintiffs"), along with Laurie Gawin (together with Plaintiffs, "Claimants") and Defendants, Estate Management Services, Inc. ("EMS") and John Milton Crabb, III, ("Crabb") (collectively "Defendants") (Defendants and Plaintiffs collectively "Parties") hereby file this Memorandum in Support of their Joint Motion for Approval of Settlement, requesting that the Court approve the Parties' Settlement Agreement and Release. (Ex. 1 – Settlement Agreement).

    The Parties submit that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of a bona fide dispute as to Defendants' alleged liability under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA"), South Carolina Payment of Wages Act

1

("SCPWA"), S.C. Code Ann § 41-10-10, *et seq*. and the Equal Pay Act of 1963 ("EPA"). This motion focuses on the Claimants' claims, including those brought under the FLSA. The Parties jointly move the Court for an Order approving their Settlement Agreement and dismissing the case with prejudice. In support of the motion, the Parties offer the following:

## I.     FACTUAL BACKGROUND

Defendant EMS is a licensed and insured aquatics contracting and land management company. Named Plaintiffs: Riggan, Biecker, Dutchak, Clough, Carey, and Evans as well as opt-in Plaintiffs Duhart, and Lemon were employed as Spray Technicians and/or Airboat Captains. Their primary job duties included driving boats and spraying aquatic plants with chemicals.

Laurie Gawin was employed in an administrative position. Gawin claims that she is also owed overtime under the FLSA.

Many of the facts are contested. The Defendants vigorously dispute liability and whether Plaintiffs worked uncompensated hours as alleged. Defendants contend that the Claimants were properly paid for all hours worked. The Claimants, on the other hand, contend that they were not paid overtime compensation when they worked in excess of forty (40) hours Monday through Friday. The Claimants contend that the only time they were paid time and half is when they worked on a Saturday or Sunday. Generally, the Claimants were paid a set hourly rate for exactly forty (40) hours a week. Their hourly rates ranged from approximately $11 to $16 an hour.[1] The Claimants allege they regularly traveled throughout South Carolina, North Carolina, Florida,

---

[1] Plaintiff Brent Carey was paid more. However, Mr. Carey worked at EMS outside of the three statutory time period therefore he is only receiving $500 in exchange for signing the Release.

2

Georgia, Virginia, Mississippi, and Missouri and that they stayed in hotels during the week. They allege that they worked approximately fifty (50) to seventy (70) hours a week, including travel time. The Defendants dispute these claims, on both a factual and legal basis, and they contend the Claimants were properly paid.

## II.    PROCEDURAL HISTORY

This lawsuit was initially filed in Beaufort County Court of Common Pleas on April 14, 2022, by Albert Rattacasa ("Rattacasa") and Jonathon Hammonds ("Hammonds"). Hammonds brought individual and class claims for unpaid commissions pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann § 41-10-10, *et seq*. Plaintiff Rattacasa brought individual claims under a variety of theories.

The Defendants removed this action to the United States District Court for the District of South Carolina, Beaufort Division on April 18, 2022. (ECF No 1). On April 26, 2022, Rattacasa and Hammonds filed an Amended Collective Action Complaint which included Plaintiffs Riggan, Biecker, Dutchak, Clough, Evans, and Carey. (ECF No 5). Evans brought an individual claim under the Equal Pay Act of 1963 ("EPA"). While the other Plaintiffs alleged that the Defendants failed to pay them, and similarly situated Spray Technicians and Airboat Captains, overtime in violation of the FLSA. Defendants filed an Answer on June 9, 2022, which included counterclaims, against Plaintiff Rattacasa. (ECF No 21). On May 16, 2022, the FLSA Plaintiffs filed a motion for conditional certification. (ECF No. 15). The Defendants filed a Response in Opposition. (ECF No. 16). The motion for conditional certification was denied as moot on November 15, 2022. (ECF No. 69).

Opt-In Plaintiff, Tylone Duhart filed a Notice of Joinder on October 6, 2022. (ECF No. 62). Opt-In Plaintiff, Rodney Lemon filed a Notice of Joinder on November 29, 2022. (ECF No. 73). The Parties exchanged written interrogatories, requests for production, and requests for admissions. During a telephonic hearing on October 21, 2022, the Court severed the individual claims of Plaintiff Rattacasa and Defendants' respective counterclaims against Rattacasa. (ECF No. 65). Plaintiff Rattacasa was directed to file a new complaint. The remaining Plaintiffs were directed to file an amended complaint relating to the FLSA, SCPWA, and EPA claims. On November 15, 2022, Plaintiffs filed an Amended Complaint in this action as directed by the Court. (ECF No 70). The Parties engaged in settlement negotiations and reached the below settlement with respect to the FLSA, SCPWA, and EPA claims. The Parties now seek Court approval of the settlement.

### III.  PROPOSED SETTLEMENT

The Defendants assert Claimants were properly paid for all hours worked. The Claimants contend they regularly worked between ten to thirty hours of overtime that they were not paid for. The Parties negotiated a compromise settlement of Plaintiffs' claim based on alleged estimated losses falling within the two-year limitations period.  The proposed Settlement Agreement in this case is the product of extensive, arms-length settlement negotiations. The Parties reached an agreement to resolve Claimants' FLSA claims as well as Evan's EPA claim and Hammonds SCPWA claim.

The calculations were performed based on the number of weeks Claimants worked in the statutory time period multiplied by the alleged overtime hours worked, multiplied by one-half the

Claimants regular hourly rate of pay. These numbers were identified though Claimants pay records, information provided by Claimants, and the Parties discovery responses and disclosures. After substantial negotiations, the Defendants agree to pay Claimants and their attorney the total amount of one hundred and twenty-five thousand dollars ($125,000.00) in full satisfaction of all of Claimants' claims, including Evan's EPA claim, Hammonds SCPWA claim, and third-party Laurie Gawain's alleged claims. Under the terms of the settlement, each Claimant will be paid for twenty-five (25) hours of overtime for two (2) years from the date they joined the lawsuit during such weeks as they were employed with EMS. The calculations are based on an overtime premium at 50% of their regular rate for all hours worked over 40. *See e.g., Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 353 (4th Cir. 2011).

Although Claimants contend it would be possible for them to receive a higher recovery at trial, it would also be possible for Plaintiffs to receive **nothing** after trial, especially considering the uncertainty regarding the number of hours the Claimants worked, if any. Considering these risks, the Claimants made a reasonable decision to settle this case for the amounts set forth below:

1. Kaleb Riggan $18,000.00
2. David Biecker $12,450.00
3. Brendan Dutchak $12,687.50
4. Benjamin Clough $5,800.00
5. Brent Carey $500.00

6. Laurie Gawin $10,500.00[2]

7. Rodney Lemon $2,200.00

8. Tylone Duhart $10,400.00

Additionally, Hammonds agreed to settle his SCPWA claim for $5,000.00. Hammonds alleged the Defendants failed to pay him commissions as per his employment agreement. After Hammonds filed this lawsuit, the Defendants sent him checks in the amount of four thousand one hundred fifty dollars and fifty-nine cents ($4,150.59), contending they had erred in Hammonds' favor and paid him all amounts to which he could claim to be owed. However, Hammonds alleged he is owed an additional five thousand $5000.00 in unpaid commissions. The Defendants, on the other hand contend Hammonds is owed nothing further.

Lastly, Evans agreed to settle her EPA claim for $13,920.00. Evans alleges she was paid less than male employees who performed the same job, requiring equal skill, under similar working conditions than her male co-workers. Thus, her damages were calculated based upon a forty (40) hour work week multiplied by $3.00 an hour for two (2) years. Here again the Defendants deny that Evans was paid less than her male co-workers.

All payments to Claimants will be apportioned as 50% to back pay, subject to payroll withholdings and retirement contributions, and at the Claimants' request, 50% to account for other alleged damages. Lastly the $125,000 gross settlement amount includes the payment of

---

[2] Gawin is a former employee of Defendants who alleges she has a FLSA claim. Gawin has not filed a lawsuit; however, she agreed to settle her claim in exchange for signing a full release.

55872793.2

thirty-three thousand five hundred and forty-two dollars and fifty cents ($33,542.50) in attorneys' fees and costs which is approximately 26.83% of the gross settlement amount.

The provisions of the Settlement Agreement have been jointly drafted by the undersigned and counsel for Defendants after exchanging several drafts of the agreement containing different versions of proposed language. The Parties ultimately agreed that the language contained in the proposed Settlement Agreement is fair and adequate to its signatories.

## IV.   LEGAL ANALYSIS

**1.   Standard of Review**

There are two ways that wage claims arising under the FLSA can be settled. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). First, the Secretary of Labor is authorized to supervise payment to employees of unpaid wages. Id. at 1353. The second way is when a current or former employee(s) files a private lawsuit against their employer and presents a proposed settlement to the court. Id.  The court can enter a judgment after scrutinizing the settlement for fairness. Id.  Settlements are permissible in lawsuits because employees are represented by an attorney who can protect their rights under the statute. Id. at 1354. Thus, when the parties submit a settlement to the court for approval, the settlement is likely to reflect a reasonable compromise of disputed issues rather "than a mere waiver of statutory rights brought about by an employer's overreaching". Id.

"Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of [FLSA] settlements, district courts in this circuit typically employ

the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Edelen v. Am. Residential Servs.*, 2013 WL 3816986, at *10 (D. Md. July 22,2013). *Lynn's Food Stores* discussed four considerations in determining whether to approve an FLSA settlement:

1. Was the settlement achieved in an adversarial context?
2. Was the Plaintiff represented by attorneys who can protect their rights?
3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?
4. Is the settlement fair?

Id. at 1354. The Parties' Settlement in this case satisfies *Lynn's Food Stores'* requirements for FLSA settlement approval. Accordingly, the Parties respectfully request that this Court approve the Settlement Agreement and implement its terms.

   i.  <u>The settlement was achieved in an adversarial context</u>

The settlement is the result of contested litigation. The Parties dispute liability. The Parties also dispute whether the Claimants worked uncompensated hours and, if any, how many. Legitimate questions exist as to the hours worked by Plaintiffs because those alleged hours were unsubmitted and unrecorded. *See Lee v. Vance Executive Protection, Inc.*, 7 Fed.Appx. 160, 165-166 (4th Cir. 2001) ("While we acknowledge that the [employees] need not prove each hour of overtime work with unerring accuracy or certainty, enough evidence must be offered so that the court as a matter of just and reasonable inference may estimate the unrecorded hours.") (internal quotations omitted). In their First Amended Complaint, the Claimants made detailed factual allegations describing Defendants' allegedly unlawful compensation practices. The Claimants contend they worked between ten (10) and thirty (30) overtime hours a week that they were not paid for. The Defendants filed an Answer disputing these contentions. Moreover, the Defendants

maintains that the Claimants were properly paid for all hours worked. Both Parties adamantly litigated their positions. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

ii. <u>Plaintiffs are represented by an attorney who can protect their rights.</u>

Plaintiffs are represented by experienced employment attorney who has protected their rights. Plaintiffs' Counsel Marybeth Mullaney ("Mullaney") has been practicing law since 1993. (Ex 2 - Decl Mullaney ¶ 3) Mullaney has had her own practice since 2011 which focuses exclusively on representing employees. (Ex 2 -Decl Mullaney ¶ 8) Mullaney has been class counsel in several collective actions under the FLSA over the past ten (10) years and she has obtained favorable results for her clients. (Ex 2 -Decl Mullaney ¶ 10). Consequently, counsels' experience litigating FLSA claims weigh in favor of approving the settlement.

iii. <u>The settlement reflects a reasonable compromise over disputed issues.</u>

The settlement represents a reasonable compromise. The Defendants deny the allegations both factually and legally. The Defendants maintain that the Claimants were properly paid; therefore, they do not owe them any unpaid wages. The Claimants contend that they regularly worked between ten to thirty hours of overtime a week that they were not compensated for. They allege that they traveled throughout the week, and they were not paid for the time they spent traveling. Moreover, the Claimants assert that they were almost always paid for exactly forty (40) hours a week, even though they often worked fifty to seventy hours a week. If the Claimants are successful at trial and on appeal, then Defendants would face the prospect of a significant monetary

verdict in favor of the Plaintiffs. Yet if the Defendants are meritorious at trial and on appeal, then the Plaintiffs face the risk of a complete defense verdict and no recovery of any kind.

If this action continues, the Plaintiffs face a potential motion for judgment on the pleadings, motion for summary judgment, motion for directed verdict, and a jury trial. Furthermore, even if the Plaintiffs prevail on liability, they face the difficulty of proving the number of overtime hours they worked each week. The Settlement is a reasonable compromise when viewed against the risks, expenses, and delays inherent in continued litigation. Immediate payment of substantial amounts to class members is available here and reasonable "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Gilliam v. Addicts Rehab Crt. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys.of LA v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). Continued litigation is going to be complex and lengthy. The agreed upon settlement amount allows the Claimants to receive their unpaid wages very soon rather than having to wait a year or two *with no guarantee* they will prevail. Accordingly, the duration of further litigation weighs in favor of approving the Parties' proposed settlement.

  iv.  <u>The settlement is fair</u>

The settlement amount fully compensates the Claimants for twenty-five (25) hours of overtime a week for two years from when they joined the lawsuit, and then some. Although the settlement amount does not include an amount specifically identified as liquidated damages, twenty-five (25) hours of overtime is on the high end of the Plaintiffs' estimated uncompensated hours. Even if the Claimants were to prevail on liability, a jury could award them less than twenty-

five (25) hours of overtime.  Also, the Claimants' have recovered two years of their alleged full back wages. This amount will not be diminished by Defendants' payment of Plaintiffs' Counsel's attorneys' fees and costs as such were negotiated separately and distinctly from the underlying claims and only after a full agreement was reached between the Parties as to the underlying claims.

**2.     Plaintiffs' Counsel is entitled to Reasonable Attorneys' Fees and reimbursement of costs.**

The FLSA contains a mandatory fee-shifting provision, which provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow reasonable attorney's fees to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The goal of a statutory award of attorneys' fees and costs is to "ensure access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). For purposes of recovery of attorneys' fees and costs, a "prevailing party" is one who has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. Although payment of attorneys' fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

The amount of Plaintiffs' fee entitlement should generally be determined according to the well-established lodestar calculation method. See, eg., *Eckerhart*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Under the lodestar method, the reasonable hours devoted to the litigation are multiplied by a reasonable hourly rate to arrive at a base hourly recovery, or "lodestar." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 765 (7th Cir. 1982), cert. denied, 461 U.S. 956 (1983). The lodestar amount is generally considered the presumptively reasonable fee. See

*Alexander S. v. Boyd*, 929 F. Supp. 925, 932 (D.S.C. 1995), aff'd mem. 89 F.3d 827 (4th Cir. 1996). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A*., 559 U.S. 542, 552 (2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." Id. The lodestar amount may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. Id.

The Fourth Circuit has also provided clarity as to the standard for determining a reasonable figure for attorneys' fees. See *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978) (adopting factors in *Johnson v. Georgia Hwy Express, Inc*., 488 F.2d 714 (5th Cir. 1974)). The factors for attorney fee petitions enumerated by the Fourth Circuit in *Barber* have even been expressly incorporated into Local Civil Rule 54.02, D.S.C., which states that "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978)." Local Civil Rule 54.02, D.S.C. As the Fourth Circuit's holding in *Barber* adopted the factors of the Fifth Circuit from the case of *Johnson v. Georgia Hwy Express, Inc*., 488 F.2d 714 (5th Cir. 1974), *Johnson* is relevant in determining an award of fees as well. In *Barber*, the Fourth Circuit held the following factors to be considered in determining a reasonable attorneys' fee:

1) The time and labor expended;
2) The novelty and difficulty of the questions raised;
3) The skill required to properly perform the legal services rendered;
4) The attorney's opportunity costs in pressing the instant litigation;
5) The customary fee for like work;
6) The attorney's expectations at the outset of the litigation;
7) The time limitations imposed by the client or circumstances;

8) The amount in controversy and the results obtained;

9) The experience, reputation and ability of the attorney;

10) The undesirability of the case within the legal community in which the suit arose;

11) The nature and length of the professional relationship between attorney and client; and

12) Attorneys' fees awards in similar cases.

Local Civ. Rule 54.02(A) (D.S.C.); *Barber*, 577 F.2d at 226, n.28.

Plaintiffs' Counsel requests and Defendants' Counsel has agreed to pay $33,542.50 **in** attorneys' fees and costs. This includes $400 in costs and $33,142.50 in fees. This figure represents approximately 60% of Plaintiffs' Counsel's actual total lodestar amount, exclusive of costs, and is a product of significant arms-length negotiations. (See Ex. 2 – Mullaney Declaration).

    A. Time and Labor Required (the First *Barber* Factor)

As to the first *Barber* factor, the time and labor expended, Plaintiffs' Counsel has spent considerable time and labor in litigating this case. The law firm representing the Claimants has expended more than 171.1 hours prosecuting this case. (Ex. 2, ¶14) The lodestar amount for this time spent is $55,605.00 inclusive of costs.[3] Id. The hours spent prosecuting this case were necessary due to the vigorous defense Defendants asserted in this case. The Defendants were represented by three attorneys from two (2) large law firms. While the Plaintiffs were represented by one attorney. Consequently, Plaintiffs' Counsel had to work long hours. Accordingly, the time and labor devoted to this collective action justifies the requested award for attorneys' fees and

---

[3] Detailed time and billing records, as well as records of costs incurred, are available at the Court's request.

costs. Moreover, the requested fee represents a negotiated reduced amount of Plaintiffs' counsels' actual lodestar.

Additionally, Plaintiffs' Counsel backed out the time she spent on Mr. Rattacasa's claims. (Ex. 2, ¶15). The 171.1 hours do not include the time she spent responding to the Defendants' Motion to Strike, Defendants' Motion to Dismiss for Failure to State a Claim, Defendants' Motion to Seal and the Answer to Defendants' Counterclaims against Rattacasa. (Ex. 2, ¶16) It also does not include the time Counsel spent on Plaintiffs' Motion for a Preliminary Injunction. Because Plaintiffs were not successful on this motion, Plaintiffs' Counsel is not seeking any fees for the time spent drafting the motion.

      B. Novelty, Difficulty, Skill Required as well as the Experience, Reputation, and Ability of the Attorneys (the Second, Third and Ninth *Barber* Factors)

As this court has held, "[e]mployment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *31 (D.S.C. Dec. 6, 2013). Plaintiffs' Counsel's law practice focuses exclusively on plaintiff-side employment law matters. (Ex. 2, ¶ 8). Plaintiffs' Counsel has handled numerous wage and hour cases. (Ex. 2, ¶ 9). Moreover, Plaintiffs' Counsel has represented hundreds of employees in complex employment cases, including FLSA collective actions and class action cases. (Ex. 2, ¶ 10) Thus, Plaintiffs' Counsel has the experience, knowledge and reputation to warrant the fees she is requesting.

      C. The Attorney's Opportunity Costs in Pressing the Instant Litigation (the Fourth *Barber* Factor)

Plaintiffs' Counsel has been precluded from accepting and working on other matters as a result of the substantial time and resources devoted to the investigation, litigation, and negotiation required to achieve and implement the settlement. As previously noted, Plaintiffs' Counsel spent over 171 hours litigating the case on behalf of the Plaintiffs. Such a vast time commitment represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which Plaintiffs' Counsel could have worked. In addition, Plaintiffs' Counsel also agreed to advance the costs of this litigation on a contingency basis, since Plaintiffs did not have the financial ability to pay the costs associated with this case.

D.  The Customary Fee for Like Work (the Fifth and Twelfth *Barber* Factors)

The hourly rate included in the attorneys' fee calculation should be the "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). The determination of a market rate is an important factor in finding a reasonable hourly rate. *Westmoreland Coal Co. v. Cox*, 602 F.2d 276, 289 (4th Cir. 2010) (citing and quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "The fact Plaintiff seeks actual billing rates used for all clients strongly favors a finding the rates are per se reasonable." *Miller v. HSBC Fin. Corp.*, 2010 WL 2722689, at *2 (D.S.C. July 9, 2010) (citing *Liberty Mutual Insurance Company v. Employee Resource Management, Inc.*, 176 F. Supp. 2d 510 (D.S.C. 2001)). Under a lodestar analysis, Plaintiffs' Counsel's requested fee is reasonable and appropriate. The hourly rates proposed by Plaintiffs' Counsel here ($350 per hour) is in line to what other lawyers charge for similar work. Moreover, case law from similar cases in the District of South Carolina indicates that the rates requested by Plaintiffs' Counsel are within the range of reasonable rates for class and

collective action matters of this nature. See *South Carolinians for Responsible Government v. Krawcheck*, 2012 WL 2830274 (D.S.C.) (Court allowed hourly rates of $425, $385, and $275); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) (Court awarded hourly rate of $410 and total fees of $500,000 to prevailing party in wage and hour case); *Savani v. URS Prof'l Solutions LLC*, 2014 WL 172503 (D.S.C. Jan. 15, 2014) (Court allowed $400 hourly rate and total fees of $729,000 in employment case). More recently, in August 2015, Judge Seymour approved hourly rates of $750.00 per hour, $650.00 per hour, and $450.00 per hour to plaintiff's counsel in an action brought under the FLSA and the SCPWA. *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 U.S. Dist. LEXIS 112985 (D.S.C. Aug. 26, 2015). The requested hourly rates are reasonable for an FLSA collective action case in the District of South Carolina. Therefore, a lodestar analysis further demonstrates the reasonableness of the requested fee.

      E.  Whether the Fee Is Fixed or Contingent (the Sixth *Barber* Factor)

None of the Claimants have been charged any monies for any of the fees or costs in this matter, either before or after the Settlement was reached. Claimants are not in a financial position to have retained counsel to pursue their unpaid wages, on an hourly basis. The requested fees and reimbursement of costs represent the only compensation available to Plaintiffs' Counsel. The only expectation Plaintiffs' Counsel had in this this case, from the outset, was that they could recover their costs and a reasonable fee.

      F.  Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)

Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); see also *Doucet ex rel. Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1262 (M.D. Ala. 1999). The very nature of employment cases requires long and intense hours, great risk of no payment of attorneys' fees at all, or, under the best of circumstances, late payment received long after the work has been accomplished. Finally, the potential for any wage litigation defendant to argue the statute of limitations places an importance on moving as quickly as possible to develop and file a case.

G.  The Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)

The Fourth Circuit has held that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here the monetary settlement will compensate each Claimant for **100%** of their respective alleged unpaid overtime for 2 years, and then some. As Judge Seymour recently held, "[i]n evaluating the results obtained for the class, courts have considered whether plaintiffs would receive a substantial percentage of their back pay amount." *McClaran,* 2015 U.S. Dist. LEXIS 112985, at *9. The proposed settlement in this case would provide the Claimants with **100%** of their back pay amount under a two-year statute of limitations. Claimants will receive additional amounts, as set forth in the Settlement Agreement. This is well within the range of reasonable recoveries for the Plaintiffs.

H.  The Undesirability of the Case (the Tenth *Barber* Factor)

17

As Judge Harwell has observed when approving a settlement and attorney's fees request in an FLSA class action, "employment cases do not appear to be eagerly sought out by the majority of the plaintiff's bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *27 (D.S.C. Dec. 6, 2013). Courts have also recognized that the financial burden and time demands of complex or novel cases make them in some sense "undesirable" to be undertaken on a full contingency fee basis. *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). As noted, this case, like almost all complex or novel cases, has provided no immediate or guaranteed income. See *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). Moreover, given the substantial hurdles to recovery, there has been a substantial risk that the Plaintiffs, and thus Plaintiffs' Counsel, would recover nothing at all for this portion of the litigation. Therefore, Plaintiffs' Counsel knowingly undertook a significant risk by prosecuting this case, and this, too, supports the fee request. See *Omnivision*, 559 F. Supp. 2d at 1047 (noting that nationwide, plaintiffs have "won only three of eleven such cases to reach verdicts since 1996").

    I.   Nature and Length of the Professional Relationship between Attorney and Client (the Eleventh *Barber* Factor)

The undersigned represented Plaintiffs throughout the course of this litigation. The Undersigned represents claimant Laurie Gawin.

55872793.2

## CONCLUSION

Thus, for the reasons discussed above, Plaintiffs and Defendants respectfully request that this Court enter an Order approving the Settlement Agreement and dismissing this case with prejudice.

Respectfully submitted,

/s/ M. Dawes Cooke, Jr.
M. Dawes Cooke, Jr. (Fed. I.D. No. 288)
BARNWELL WHALEY PATTERSON &
HELMS, LLC
P.O. Drawer H
Charleston, SC 29402
P: (843) 577-770
mdc@barnwell-whaley.com

Beth Ann Lennon, Pro Hac Vice
Carissa J. Davis, Pro Hac Vice
SHERMAN & HOWARD L.L.C.
675 Fifteenth Street, Suite 2300
Denver, CO 80202
P: (303) 297-2900
blennon@shermanhoward.com
cdavis@shermanhoward.com

*Attorneys for Defendants and
Counterclaimants Estate Management
Services, Inc. and John Milton Crabb III*

January 5, 2022
Charleston, South Carolina

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #66585)
MULLANEY LAW
652 Rutledge Ave, Suite A
Charleston, South Carolina 29403
P: (843) 588-5587
marybeth@mullaneylaw.net

*Attorney for Plaintiffs*

55872793.2